UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                                          Chapter 7

PAMELA S. PERSAUD aka                                          Case No. 12-43602-CEC
PAMELA SULEMAN,

                                    Debtor.
-----------------------------------------------------------x

<u>DECISION</u>

APPEARANCES:

Dennis J. O'Sullivan, Esq.
Law Office of Dennis J. O'Sullivan, P.C.
210-13 35th Avenue
Bayside, New York 11361
Attorney for Debtor

Marylou Martin, Esq.
Office of the United States Trustee
271 Cadman Plaza East
Suite 4529
Brooklyn, NY 11201

CARLA CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Tracy Hope Davis, the United States Trustee for Region 2 (the "UST") seeking dismissal of this case pursuant to § 707(b)(1), (2), and (3) of Title 11 of the United States Code (the "Bankruptcy Code" or "Code") for abuse of the provisions of Chapter 7 of the Bankruptcy Code.[1]  The UST contends that a presumption of abuse arises under § 707(b)(2) (the "means test"), and that Debtor has not rebutted that presumption, or alternatively, that the case is abusive pursuant to § 707(b)(3) based upon the totality of circumstances.  Debtor argues that the UST's motion should be denied as untimely under § 704(b)(1), or, alternatively, denied on the merits.  For the reasons set forth below, the UST's motion is granted.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

Pamela S. Persaud, a/k/a Pamela Suleman (the "Debtor"), previously filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 29, 2011.  The UST moved to dismiss that case under § 707(b)(1), (2), and (3) for abuse of the provisions of Chapter 7.  The Debtor did not oppose the UST's motion, and the case was dismissed on January 3, 2012.

Ms. Persaud commenced the instant case by filing a second Chapter 7 petition on May 17, 2012.  On May 30, 2012, Debtor filed her Statement of Current Monthly Income and Means Test calculation (Official Form 22A).  <u>See</u> Debtor's Statement of Current Monthly Income, ECF

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11 of the United States Code.

No. 15.  On Lines 11 and 12 of the form, Debtor reported her monthly income as $3,750, and her

non-debtor husband's monthly income as $9,814, for a total of $13,564 per month, or $162,768

annually.  On Line 17 of the form, Debtor deducted $5,742.19 from the total monthly income as

a "marital adjustment," which she claims is income of her husband that was not regularly

contributed for household expenses, leaving $7,821.81 as her current monthly income ("CMI")

for purposes of her means test calculation.[2]  Debtor listed the following expenses in calculating

the marital adjustment on Line 17:

- H[usband]'s withholding Taxes $1,800
- 401(k) Contribution $179.19
- Auto loan [husband] $380
- Auto Insurance $220
- Meals at work H[usband] $150
- Tuition, college & High schools $2,458
- Clothing $150
- H[usband]'s excessive groc[eries] $375
- Student loan PLUS $30

After deducting her expenses, which she calculated as $8,109.24, from her claimed CMI of

$7,821.81, Debtor was left with no disposable income.  Based on these calculations, Debtor

asserted that the presumption of abuse under § 707(b)(2) does not arise in her case.

The meeting of creditors pursuant to § 341(a) (the "§ 341 meeting") began on June 22,

2012, and was adjourned to July 18, 2012.  On July 6, 2012, the UST filed a statement pursuant

to § 704(b)(1)(A) asserting that this case is presumed to be an abuse under § 707(b)(2) (the "ten

---

[2] Line 17 of Official Form 22A provides as follows: "**Marital adjustment**. If you checked the box at Line 2.c [indicating that Debtor is married and not filing jointly], enter on Line 17 the total of any income [of the non-filing spouse] that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the [non-filing spouse's] income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose."

day statement"). The UST filed the instant motion on July 9, 2012, seeking dismissal of the case pursuant to § 707(b)(1), (2), and (3).

The UST contends that the case should be dismissed because a presumption of abuse arises under § 707(b)(1) and (2). According to the UST, certain expenses included by the Debtor in the marital adjustment constitute household expenses, and thus should not have been included in the marital adjustment, and consequently deducted from her income, for means test purposes. The UST acknowledges that the Debtor's husband's withholding taxes, 401(k) contributions, automobile loans, and insurance are his personal expenses that may properly be excluded from the Debtor's income for means test purposes. However, the UST contends that the other expenses listed under the marital adjustment, including tuition payments for the couple's children, are household expenses, and thus should have been counted as Debtor's income in the means test calculation. Based on the UST's calculations, the marital adjustment in this case should be limited to $2,579, resulting in $10,984.81 as Debtor's CMI under the means test. The UST's calculations leave Debtor, after deducting expenses of $7,946.24 from Debtor's CMI, with disposable income of $3,038.37, more than the amount necessary to trigger the presumption of abuse, and enough to pay all unsecured claims in less than 25 months through a Chapter 13 plan.[3] The UST contends that the Debtor has not shown any "special circumstances" to rebut the presumption of abuse.

Alternatively, the UST argues that the case should be dismissed under § 707(b)(1) and (3) because the totality of the circumstances demonstrates abuse. The UST asserts that if Debtor eliminated certain "unnecessary" and "extravagant" expenses, such as private school tuition and

---

[3] Debtor calculated total expenses of $8,109.24. However, because this discrepancy does not affect the outcome of this decision, it is unnecessary to address it.

spending money for her children, Debtor could afford to repay all of her unsecured debt through a Chapter 13 plan.

In opposing the UST's motion, Debtor asserts that, as a threshold matter, the UST's ten day statement was late because it was not filed within ten days of the "date of the first meeting of creditors" as required by § 704(b)(1)(A). Debtor contends that a timely statement is a prerequisite to a motion to dismiss based on the presumption of abuse, and that a late-filed statement precludes the UST from bringing a motion to dismiss on that ground.

Alternatively, Debtor maintains that if the UST's motion is considered on the merits, the expenses excluded under the marital adjustment are not household expenses, and thus were properly excluded from her income for purposes of the means test. With respect to the costs of her husband's clothing, his meals at work, and the portion of household groceries that are consumed exclusively by him, Debtor argues that these are personal expenses of her husband that should not be counted in determining disposable income. With respect to the costs of college and high school tuition, Debtor acknowledges that these expenses are for the tuition of their three children, including $1,166.34 per month for SUNY Stonybrook, $625.00 per month for St. Francis High School, and $666.66 per month for Molloy High School. However, Debtor argues that because the payments were made from a checking account maintained solely in the name of her husband, and he alone is contractually liable for the tuition, those expenses should not be counted as household expenses. Debtor further maintains that even if the presumption of abuse arises, the presumption is rebutted based on "special circumstances," because her husband's income is unavailable to fund a Chapter 13 plan. Finally, Debtor argues that the totality of circumstances do not warrant dismissal under § 707(b)(1) and (3).

**<u>DISCUSSION</u>**

Debtor contends that the portion of the UST's motion that is predicated on the

presumption of abuse pursuant to § 707(b)(2) should be denied because the ten day statement

was not filed within the time required under § 704(b)(1).  Debtor's contention requires resolution

of two threshold issues: first, whether, under §704(b), the UST's ten day statement was timely;

and second, if the ten day statement was untimely, whether untimeliness precludes the UST from

bringing a motion to dismiss for abuse under § 707(b)(2).

A.  <u>Timeliness of the Ten Day Statement under § 704(b)(1)</u>

With respect to timeliness of the ten day statement, the issue is whether the statement

must be filed within ten days after the *first date* the § 341 meeting is held, or whether an

adjournment that continues the § 341 meeting to a later date extends the time for the U.S. trustee

to file the statement.  Section 704(b)(1) provides that

> [w]ith respect to a debtor who is an individual in a case under this
> chapter--(A) the United States trustee…shall review all materials
> filed by the debtor and, not later than 10 days after the *date of the*
> *first meeting of creditors*, file with the court a statement as to
> whether the debtor's case would be presumed to be an abuse under
> section 707(b)

(emphasis added).

The phrase "date of the first meeting of creditors" is ambiguous.  Because the § 341

meeting may be commenced on one date, and then adjourned to a later date, <u>see</u> Bankruptcy Rule

2003(e), there are often two or more possible dates from which a time period could be measured

in relation to the § 341 meeting.  When a time period is to be measured from the commencement

of the § 341 meeting, the Code often refers to the "first date set" for the meeting, or uses

similarly unambiguous language.  <u>See, e.g.</u>, § 521(a)(2)(B) (requiring a debtor to perform her

stated intention to retain or surrender property subject to a security interest "within 30 days after the first date set for the meeting of creditors");  § 521(e)(2)(A)(i) (requiring debtor to provide income tax return "not later than 7 days before the first date set for the first meeting of creditors"); § 1308(a) (requiring a Chapter 13 debtor to file tax returns "not later than the day before the date on which the meeting of the creditors is first scheduled to be held").  Similarly, the Bankruptcy Rules consistently use the words "first date set for the meeting of creditors under § 341(a)" when measuring time periods from the commencement of the § 341 meeting, see Fed. R. Bankr. P. 1007(c); 1017(e)(1), (2); 1019(1)(B); 2002(h); 2015.3(b); 3002(c); 4002(b)(3), (4); 4004(a); 4007(c); 4008(a), and provide that the time period for objecting to Debtor's claimed exemptions is "30 days after the meeting of creditors held under § 341(a) is concluded." See Fed. R. Bankr. P. 4003(b).  However, the Code employs different language in other provisions that create requirements tied to the § 341 meeting.  See, e.g. § 521(a)(2)(A) (requiring a statement of intention to be filed on or before "the date of the meeting of creditors"); §521(a)(6) (requiring redemption or reaffirmation of personal property subject to a security interest "not later than 45 days after the first meeting of creditors"); §1324(b) (requiring a Chapter 13 confirmation hearing to be held "not later than 45 days after the date of the meeting of creditors").  The language "the date of the first meeting of creditors," used in § 704(b), is not found in any other provision of the Code, at least relating to time computation, and has been the subject of conflicting interpretations, as courts have disagreed whether the ten day period begins to run at the commencement of the § 341 meeting or at its conclusion.

Courts interpreting the language of § 704(b) to require the ten day statement to be filed within ten days after the date the § 341 meeting commences have argued that this interpretation is better grounded in the statutory language.  In their view, construing § 704(b) as referring to the

conclusion of the § 341 meeting requires ignoring the word "first" and adding the word "conclusion" to the statute. See In re Close, 353 B.R. 915, 918 (Bankr. D. Kan. 2006) ("The language is not vague or ambiguous and does not need extraneous verbiage to clarify its meaning…the U.S. trustee must add words to the statute to make her interpretation work."). Courts have also noted that the commencement of the § 341 meeting provides an easily ascertainable date from which to measure the ten day period under § 704(b). See In re Wise, 453 B.R. 220, 226 (Bankr. D. Vt. 2011) ("By its plain meaning, the provision refers to a single and easily discernible date…[T]he most sensible conclusion as to the date to which it refers is to the first date set for the § 341 meeting of creditors."); In re Clark, 393 B.R. 578, 583 (Bankr. E.D. Tenn. 2008) ("[T]he date will be even more certain if it means the first date set for the meeting of creditors [which] can be determined from the docket and the notices sent by the clerk's office."). It has also been argued that the purpose of § 704(b) is to "require the U.S. trustee to give the debtor and other interested parties notice early in the case as to whether abuse is presumed," which would "hardly work if the statute allows the U.S. trustee to delay filing the statement of presumed abuse or not until ten days after the meeting of creditors is concluded." Clark, 393 B.R. at 583; see also In re Robertson, 370 B.R. 804, 811 (Bankr. D. Minn. 2007) ("The language of §§ 704(b)(1)-(2) tracks with a more general intent behind [the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")], to reduce delay in the fixing of rights and statuses during the course of bankruptcy cases, and in particular to expedite the basic determination of whether a party should be in bankruptcy at all."). One court expressed concern that if the ten day time period were to commence at the conclusion of the meeting, "the deadline would be open to manipulation" by the trustee, who may unilaterally adjourn the meeting under Bankruptcy Rule 2003(e). Close, 353 B.R. at 918.

Other courts have reached the opposite conclusion, holding that the time to file the statement runs from the conclusion of the § 341 meeting.  <u>See, e.g.</u> <u>Reed v. Anderson (In re Reed)</u>, 422 B.R. 214, 226 (C.D. Cal. 2009) ("[T]he court finds that the ten-day period runs from the conclusion of the § 341(a) meeting rather than its commencement."); <u>In re Molitor</u>, 395 B.R. 197, 203 (Bankr. S.D. Ga. 2008) ("[T]he 10-day deadline in § 704(b)(1)(A) runs from the conclusion of the meeting of creditors"); <u>In re Granger</u>, 2008 WL 5157843 at *2 (Bankr. D.N.M. 2008) ("§ 704(b)(2) requires that the statement must be filed within ten days of the conclusion of the meeting of creditors."); <u>In re Cadwallder</u>, 2007 WL 1864154 at *13 (Bankr. S.D. Tex. 2007) ("[T]he ten days in which the U.S. trustee must file his statement runs from the end of the creditors' meeting, not the commencement of the creditors' meeting."); <u>see also</u> Alan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy (16th Ed. 2012) § 704.16[1], at 704-34 to 704-35 ("[L]ogically it makes sense to read [the § 704(b)] deadline as running from the conclusion of the meeting of creditors, rather than the first date set for the meeting of creditors…").  The view that the time to file the ten day statement begins to run from the conclusion of the § 341 meeting is the more persuasive, for a number of reasons.

Preliminarily, it should be noted that the use of the word "first" in the statutory language "the date of the first meeting of creditors" does not compel the conclusion that the time period begins to run at the commencement of the § 341 meeting.  The term "first meeting of creditors" is commonly used to refer to the entire § 341 meeting, from its commencement to its conclusion.  <u>See</u> <u>Reed</u>, 422 B.R. at 226 ("[C]ommon parlance…often denominates the § 341(a) meeting in its entirety the 'first meeting of creditors.'"); <u>Molitor</u>, 395 B.R. at 201("'[F]irst meeting of creditors' is a term of art among bankruptcy practitioners and synonymous with 'the 341 meeting' and the 'meeting of creditors.'").  Although the word "first" in § 704(b) may appear

superfluous, it can be understood in light of historical usage.  "It is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms."  Molitor, 395 B.R. at 202 (quoting Neder v. United States, 527 U.S. 1, 21 (1999)).  Prior to the adoption of the Bankruptcy Code in 1978, the term "first meeting of creditors" was used to refer to the meeting of creditors, now required under § 341(a), in order to differentiate the first meeting from the special meeting and final meeting that were provided for at that time.  See Clark, 393 B.R. at 581 (citing 11 U.S.C. § 91 (1978); Fed. R. Bankr. P. 204 (1978); Pub. L. 95–598, 92 Stat. 2549, §§ 401 & 402 (Nov. 6, 1978)).  Moreover, although the term "first meeting of creditors" was replaced with "meeting of creditors" when the Bankruptcy Code was adopted in 1978, the word "first" may still be used to distinguish the § 341 meeting from special or final meetings, which may be called at the U.S. trustee's discretion under Bankruptcy Rule 2003(f) and (g).  The word "first" may therefore be understood to describe the "type of meeting referred to, rather than the first convening of such meeting."  Molitor, 395 B.R. at 203.

Because the statutory language is ambiguous, it is necessary to analyze the other arguments in favor of each interpretation.  The most compelling reason to interpret § 704(b) as requiring the ten day statement to be filed after the conclusion of the § 341 meeting is that it would be illogical to require the U.S. trustee to decide whether a presumption of abuse arises before having adequate opportunity to make that determination.  Such a requirement would, at times, compel the U.S. trustee to make a determination with little or no opportunity to understand the debtor's circumstances, if, for example, the debtor failed to attend at the first date set for the meeting, or failed to provide sufficient information at that time.  See Reed, 422 B.R. at 225

("Presumably, there are often discrepancies in the information submitted by debtors; continuing

the § 341 meeting allows the UST to gather needed information before conducting the meeting");

In re Granger, 2008 WL 5157843 at *2 ("[R]equiring the United States Trustee in all instances to

file the statement of abuse within ten days of the date first set frustrates the purpose of the

statute, which directs the United States Trustee to review all information filed by a debtor to

make a determination of whether a presumption of abuse arises, a determination that may not be

possible to make if the debtor fails to timely file all the required information."); see also 6 Collier

on Bankruptcy § 704.16[2], at 704-35 ("[I]f the debtor is unable to attend the meeting on the first

date set, or provide all necessary documents, the United States trustee might not have all of the

materials necessary to make an accurate determination.").  The facts underlying several cases in

which the U.S. trustee was alleged to have failed to timely file the statement highlight this

problem. See, e.g., Robertson, 370 B.R. at 807 (although the original means test filed by debtors

showed negative household income, the UST later identified errors in debtors' calculations of

income and expenses); Cadwallder, 2007 WL 1864154 at *1 (§ 341 meeting continued twice

"for Debtor to provide additional information"); Reed, 422 B.R. at 226 (debtors "provided

conflicting CMI information that made an accurate determination regarding presumption of

abuse within ten days of the commencement of the § 341(a) meeting impossible").  Moreover,

courts have generally held that § 704(b)(1)(A) requires a definitive statement, and thus the U.S.

trustee cannot simply file a statement indicating that she does not have sufficient information,

and deferring the determination to a later date.  See, e.g., Reed, 422 B.R. at 223 ("Ten–Day

Statement must include an unequivocal statement as to whether the case is or is not an abuse");

In re Perrotta, 378 B.R. 434, 438 (Bankr. D.N.H. 2007) ("§ 704(b)(2) would make no sense when

applied to a statement indicating that the UST cannot make a determination regarding abuse");

Robertson, 371 B.R. at 810 ("Under the common, every-day meaning of the statutory verbiage there is no room for an equivocal placeholder, the planting of a stake that is somehow to reserve the right to draw a conclusion for later exercise, to toll the period under § 704(b)(2)").

This interpretation also advances certain important goals of BAPCPA.  As explained in Reed, 422 B.R. at 225,

> [t]o require the UST to make an immediate determination of abuse based on incomplete or inaccurate information would not only be illogical, but would be contrary to BAPCPA's goals of restoring "integrity in the bankruptcy system" and "ensur[ing] that the system is fair to both debtors and creditors." H.R.Rep. No. 31(I), at 2, 109 Cong., 1st Sess. (2005), reprinted in 2005 U.S.C.C.A.N. 88, 97. Requiring an immediate determination regardless of the adequacy of the information provided at the § 341(a) meeting would likely result in incorrect presumptions of abuse.  Moreover, a debtor could avoid the filing of a ten-day notice by submitting ambiguous or incorrect information in preparation for the first § 341(a) meeting and correcting it once the ten-day window had closed.

The competing policy arguments, that the commencement of the § 341 meeting provides a more easily ascertainable date than its conclusion, and provides debtors with earlier notice whether the U.S. trustee takes the position that the case is presumed to be an abuse, do not overcome these considerations.  Bankruptcy Rule 2003(e) provides that the § 341 meeting may only be adjourned "by announcement at the meeting of the adjourned date and time," and requires "prompt" filing of a statement specifying the date and time to which the meeting is adjourned.  As such, the date on which the meeting concludes, and thus the date by which the U.S. trustee's statement must be filed, will be easily ascertainable by the U.S. trustee and the debtor.

Additionally, although courts have concluded that the purpose of § 704(b) is to provide prompt notice to debtors whether their cases will be challenged under § 707(b)(2), there is no

indication that Congress intended to require notice within ten days of the first date set for the meeting of creditors in every case. <u>Cf. Clark</u>, 393 B.R. at 583 (stating, without further clarification, that "[§] 704(b) is obviously intended to require the U.S. trustee to give the debtor and other interested parties notice early in the case as to whether abuse is presumed"). Moreover, as discussed more fully in the next section, § 704(b) applies only to the U.S. trustee, whereas other parties in interest may file a motion to dismiss without filing a statement. <u>See</u> § 707(b). An early statement by the U.S. trustee that the presumption does not arise does not inform a debtor whether other parties will seek dismissal for abuse. It is also noteworthy that as a general matter, a § 341 meeting will be adjourned only where the debtor fails to appear at the first date set, or when the trustee seeks additional information from the debtor. <u>See Granger</u>, 2008 WL 5157843 at *3.

In light of the foregoing, the possibility that § 341 meetings might be indefinitely adjourned in order to delay the deadline for the U.S. trustee to file a statement is not a compelling concern. The statement required under § 704(b) is a simple one, stating only whether or not the case is presumed to be an abuse. Once a debtor has supplied all information necessary for the U.S. trustee to make this determination, and the U.S. trustee has had opportunity to review it, the U.S. trustee has no reason to cause the § 341 meeting to be adjourned merely to delay filing the ten day statement. Moreover, some courts have held that a debtor may seek judicial review of a decision to adjourn a § 341 meeting. <u>See Molitor</u>, 395 B.R. at 204 (<u>citing In re Vance</u>, 120 B.R. 181 (Bankr. N.D. Okla. 1990)). Also, as noted by the court in <u>Reed</u>, to require the U.S. trustee to file a statement within ten days of the commencement of the § 341 meeting would allow debtors to abuse the system by failing to appear at the § 341 meeting, or

delaying production of documents that could affect the U.S. trustee's determination until after the deadline has passed. <u>See</u> <u>also</u> <u>Molitor</u>, 395 B.R. at 204.

For these reasons, the date from which to measure the ten day deadline under § 704(b)(1) is the date when the § 341 meeting concludes. Because in this case the UST filed the ten day statement prior to the conclusion of the § 341 meeting, it was timely in accordance with the requirements of § 704(b)(1).

**B.  <u>Late-Filed Statement as a Time-Bar to a Motion to Dismiss for Abuse under § 707(b)(2)</u>**

Even if the ten day statement were not timely filed, untimeliness would not bar the UST from later filing a motion to dismiss for abuse under §707(b)(1) and (2). Section 704(b)(2) provides, in relevant part, that

> [t]he United States trustee…shall, not later than 30 days after the date of filing a statement under paragraph (1), either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States trustee…does not consider such a motion to be appropriate…

Most courts that have addressed the issue have held, without discussion, that the U.S. trustee's failure to timely file a ten day statement operates to bar the U.S. trustee from filing a motion to dismiss under § 707(b)(2). <u>See</u> <u>Wise</u>, 453 B.R. at 226; <u>Fokkena v. Draisey (In re Draisey)</u>, 395 B.R. 79, 82 (8th Cir. B.A.P. 2008); <u>Clark</u>, 393 B.R. at 583; <u>Perrotta</u>, 378 B.R. at 438; <u>In re Byrne</u>, 376 B.R. 700, 703 (Bankr. W.D. Ark. 2007). <u>In re Robertson</u> provides a detailed explanation for this conclusion, reasoning that because the word "shall" in § 704(b)(1)(A) provides a mandate, it "establishes its procedural prescriptions as essential prerequisites for any subsequent motion." 370 B.R. at 809. The <u>Robertson</u> court therefore concluded that because § 704(b)(2) mandates that a motion to dismiss under § 707(b)(2) be filed within "30 days after the date of filing a

statement under paragraph (1)," "a motion that invokes the presumption can be made only if the UST has already, timely, put of record his unequivocal conclusion that the presumption lies in the case." Robertson, 370 B.R. at 811.  In adopting the Robertson court's conclusion, the court in Reed observed that one of the purposes of BAPCPA was to "streamline case administration by implementing a series of measures that required debtors to comply with strict deadlines." Reed, 422 B.R. at 222 (citing Robertson, 370 B.R. at 811).  Taking this one step further, the Reed court concluded that "it is unlikely that Congress intended to relax the time standards governing responsive action by the UST." Reed, 422 B.R. at 222–23.

This last point is unpersuasive, because the purpose of BAPCPA was, as noted by the Reed court, to "streamline administration" by "requir[ing] debtors to comply with strict deadlines."  There is no basis for assuming that Congress intended to expand this purpose in the context of § 704(b) in order to impose penalties on the U.S. trustee for failure to act in a timely fashion.  Additionally, while the mandatory language used in the statute imposes a requirement on the U.S. trustee, it does not impose a penalty for failure to comply with that duty.  This point was explained in In re Cadwallder, 2007 WL 1864154 (Bankr. S.D. Tex. 2007); see also In re Jasper, 414 B.R. 83, 88 (Bankr. E.D. Va. 2009) (agreeing with Cadwallder that failure to timely file a ten-day statement does not bar the U.S. trustee from filing a motion to dismiss).

The Cadwallder court found that "§ 704(b) establishes a duty, but does not establish the penalty for failure to perform that duty."  2007 WL 1864154 at *6.  In addressing the use of the mandatory word "shall" in § 704(b)(1), the court cited the general rule of statutory construction that deadlines imposed on government agencies by statute do not invalidate actions taken after that deadline unless such a consequence is specified by the statute.  See Id. (quoting Barnhart v. Peabody Coal, 537 U.S. 149, 158–59 (2003)).  In Barnhart, the Supreme Court found that a

statutory provision that required the Commissioner of Social Security to act within a specified

time frame was

> meant to spur him to action, not limit the scope of his authority…
> If a statute does not specify a consequence for noncompliance with
> statutory timing provisions, federal courts will not ordinarily
> impose their own coercive sanction…A statute directing official
> action needs more than a mandatory "shall" before the grant of
> power can sensibly be read to expire when the job is supposed to
> be done.

Cadwallder, 2007 WL 1864154 at *6 (quoting Barnhart, 537 U.S. at 158–161).  Applying this to

§ 704(b), the court noted that § 704(b) does not specify any consequence for failure to timely file

the ten day statement.  Cadwallder, 2007 WL 1864154 at *6.  Moreover, the court noted that

prior to BAPCPA, § 704 imposed duties only on the Chapter 7 trustee without any specified

penalty for failure to abide by them, and found no indication that BAPCPA was intended to

institute such penalties in imposing additional duties on the U.S. trustee.  Id. at *7.

Cadwallder found further support for its position in the interplay of §§ 704(b) and 707(b).

Section 707(b) authorizes the court to dismiss a case for abuse "on its own motion or on a motion

by the United States trustee, trustee…, or any party in interest."  Since any time-bar applicable to

the U.S. trustee for failure to timely file a statement would not extend to other parties in interest,

applying § 704 as a statute of limitations would mean that an untimely statement by the U.S.

trustee "shift[s] the burden [of seeking dismissal under § 707(b)(2)] to the court or to creditors,"

which would serve no beneficial purpose.  Id.  Second, the court found it unlikely that Congress

would establish a deadline based on a "remarkably informal" requirement that the U.S. trustee

simply file a statement, rather than a motion, and which only requires that the court "provide a

copy" to creditors, rather than requiring the U.S. trustee to serve the statement on all parties.  Id.

Finally, the court inferred that the lack of a provision allowing extension of the time to file the statement indicates that § 704(b) imposes a duty, rather than a deadline.  See Id.

Addressing the argument that an early deadline was intended to provide early notice to debtors, and thus an untimely ten day statement warrants dismissal of a subsequent motion to dismiss brought on that ground, the Cadwallder court noted that this duty appears to be for the benefit of creditors, not the debtor, in that creditors would benefit from the U.S. trustee undertaking to file the motion instead of "shifting the burden" to them.  The court pointed out that the fact that the statement must only be filed with the court and provided to creditors, whereas notice to the debtor is not required, indicates that § 704(b)(1) was intended to "effect[] a mechanism for letting these alternative movants know whether they will need to file their own motions." Id. at *8.

Cadwallder's well-reasoned analysis demonstrates that the better approach is to conclude that § 704(b) imposes a duty on the U.S. trustee, but does not operate as a statute of limitations. As a result, even if the ten day statement filed in this case were deemed untimely, it would not warrant automatic dismissal of the UST's motion.

As a final point, it is noteworthy that if § 704(b) is understood to require a statement within ten days of the commencement of the § 341 meeting, and if an untimely statement precludes the UST from filing a motion to dismiss under § 707(b)(2), the initial clause of Bankruptcy Rule 1017(e)(1) is superfluous.[4]  This rule provides that the deadline for motions to dismiss for abuse under § 707(b) is 60 days from the date first set for the § 341 meeting, but

---

[4] Rule 1017(e)(1) provides, in relevant part, that

> Except as otherwise provided in §704(b)(2), a motion to dismiss a case for abuse under §707(b) or (c) may be filed only within 60 days after the first date set for the meeting of creditors under §341(a), unless, on request filed before the time has expired, the court for cause extends the time for filing the motion to dismiss.

carves out an exception "as provided in § 704(b)(2)." If the deadline for filing the ten day statement were measured from the commencement of the § 341 meeting, and a late-filed motion to dismiss for abuse were barred, the motion to dismiss, which must be filed within 30 days of the ten day statement, would always be required under § 704(b)(2) to be filed no later than 40 days after the first date set for the § 341 meeting. Thus, the only way § 704(b) could ever provide an extension of the deadline set by Rule 1017(e)(1) would be if the time for the filing of the statement begins to run at the conclusion of the § 341 meeting, or if a late-filed statement does not bar a later motion to dismiss brought within the 30 day time frame set by § 704(b)(2).

C. <u>Dismissal under § 707(b)(2)</u>

The substantive merit of the UST's § 707(b)(2) motion to dismiss turns on whether the expenses deducted by debtor from her income in calculating the means test were properly classified as non-household expenses. Section 707(b)(1) provides that a court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts…if it finds that the granting of relief would be an abuse of the provisions of this chapter." That section further provides that under what is known as the "means test," a presumption of abuse will arise "if the debtor's *current monthly income*" reduced by specified allowable expense deductions and multiplied by 60, exceeds $11,725. § 707(b)(2)(A) (emphasis added).

Current monthly income includes, *inter alia*, "any amount paid by any entity other than the debtor…on a regular basis for the *household expenses* of the debtor or the debtor's dependents." § 101(10A)(B) (emphasis added). Income of a non-filing spouse can therefore be excluded only to the extent it is not regularly contributed to household expenses. <u>See</u> <u>Stapleton v. Baldino (In re Baldino)</u>, 369 B.R. 858, 860 (Bankr. M.D. Pa. 2007). An expense paid by the

non-debtor spouse will be considered a household expense, and thus included in income on the means test, unless the expense is "purely personal" to the non-debtor spouse.  See In re Rable, 445 B.R. 826, 829 (Bankr. N.D. Ohio 2011).  Official Form 22A, which is used by Chapter 7 debtors to calculate the means test, incorporates this principle by including in debtor's income all of a non-debtor spouse's income, but allowing a debtor to deduct, as a "marital adjustment," any income of debtor's spouse that was not paid on a regular basis towards the household expenses of the debtor or the debtor's dependents.  See Official Form 22A at Line 17.  "The key inquiry for determining the propriety of a marital adjustment…is the extent to which a non-filing spouse's income is not regularly contributed or dedicated to the household expenses."  In re Vollen, 426 B.R. 359, 370 (Bankr. D. Kan. 2010).

Here, the first disputed marital adjustment deduction is for college and private high school tuition expenses of three children of Debtor and her non-filing husband, totaling $2,458 per month.  Debtor argues that because the payments were made from a checking account maintained solely in the name of her husband and only he is contractually liable for the tuition, those expenses should not be considered household expenses.  The UST responds that payments for tuition are clearly household expenses for Debtor's dependents, and thus cannot be included as part of the marital deduction.

Debtor's position regarding these tuition expenses is not supported by a plain reading of § 101(10A)(B).  That section provides that income includes "any amount paid by any entity other than the debtor…on a regular basis for the household expenses of the debtor *or the debtor's dependents*."  § 101(10A)(B) (emphasis added).  It is undisputed that the tuition expenses in this case were paid on a regular basis by Debtor's spouse for the benefit of Debtor's dependents.  As such, they are household expenses, rather than purely personal expenses of Debtor's spouse.  The

logic of this conclusion was explained in In re Vollen, 426 B.R. 359 (Bankr. D. Kan. 2010), where, as in this case, the debtor argued that expenses paid by her non-debtor spouse for their daughter's college expenses were not "household expenses." In concluding that a marital deduction was inappropriate for such expenses, the court explained that:

> A dependent's college expense, even when incurred by a person of majority, is a household expense. A dependent is one who is sustained by another or relies on another for support. The [ ] daughter clearly falls into that category and the family's expenses incurred subsidizing her higher education and providing her with a means of transportation while she is a dependent amount to support.

Id. at 373. Debtor's claim that the tuition is paid from an account maintained solely in the name of her husband, and that the contractual obligations are exclusively his, are irrelevant to determining whether the expenses are "household expenses of the debtor or the debtor's dependents."

Debtor argues that this court should reject the holding in Vollen, and instead rely on the Vollen court's earlier decision in In re Shahan, 367 B.R. 732 (Bankr. D. Kan. 2007). In that case, the court held that income paid by the non-debtor spouse for her daughter's college expenses could properly be deducted as a marital adjustment. However, as noted in Vollen, the daughter in that case was the child of the non-filing spouse from a previous marriage, and was not a dependent of the debtor. See Vollen, 426 B.R. at 370, 373. That distinction is decisive, because CMI only includes "expenses of the debtor or the debtor's dependents." § 101(10A)(B). Because the educational expenses here are for the benefit of children of both Debtor and her husband, they are squarely within the definition of household expenses, and not subject to deduction as a marital adjustment.

Disallowance of this portion of Debtor's marital adjustment results in total monthly income of $10,279.81.  After deducting Debtor's asserted expense deduction of $8,109.24, Debtor's monthly disposable income is $2,170.  This figure results in 60-month disposable income of $130, 234, well in excess of the amount necessary to trigger the presumption of abuse. Because the presumption arises after disallowing this portion of the marital adjustment alone, it is unnecessary to address whether the other disputed items were properly deducted.

Finally, Debtor argues that even if the presumption of abuse arises, "special circumstances" exist to rebut that presumption, since the majority of the household income is not controlled by the Debtor, and thus may be unavailable to fund a Chapter 13 plan.  Section 707(b)(2)(B) provides that "the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call to active duty in the Armed Forces…that justify additional expenses or adjustments of [CMI] for which there is no reasonable alternative."  The Debtor's argument must be rejected, because the "special circumstances" exception cannot be used to circumvent the definition of CMI as set forth in § 101(10A).  See In re Cotto, 425 B.R. 72, 77 (Bankr. E.D.N.Y. 2010).  Like the provision at issue in Cotto, the statutory language here is unambiguous, expressly including in CMI any income of a non-debtor spouse that is contributed "on a regular basis for the household expenses of the debtor or the debtor's dependents," whether or not the non-debtor spouse chooses to make that income available to fund a Chapter 13 plan.  See § 101(10A)(B).  To adopt Debtor's position would be to allow debtors whose household income exceeds the statutorily prescribed maximum because of outside contributions to household expenses to circumvent the statutory inclusion of those amounts in disposable income under § 101(10A), based on the refusal of the contributor to make these funds available to fund a Chapter 13 plan.

Because this case must be dismissed under § 707(b)(1) and (2), it is unnecessary to address the UST's remaining arguments for dismissal under § 707(b)(3).

## **CONCLUSION**

For the reasons set forth above, the UST's motion is granted, and this case is dismissed. A separate order will issue.



**Dated: Brooklyn, New York
February 4, 2013**

**Carla E. Craig
United States Bankruptcy Judge**